UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MARIE LEA ANDERSON, )
)
    *Plaintiff* )
)
v. ) No. 1:11-cv-109-DBH
)
MICHAEL J. ASTRUE, )
**Commissioner of Social Security,** )
)
    *Defendant* )

## REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge erred in improperly evaluating (i) an opinion of treating source Fred D. Risser, M.D., and (ii) the plaintiff's credibility. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 7) at 2-5. I find no reversible error and, accordingly, recommend that the court affirm the decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of degenerative joint disease, osteoarthritis, affective disorder, and

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 14, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

polysubstance abuse in remission, Finding 2, Record at 9; that she retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that she could not interact with the public, and was capable of performing simple, repetitive work with up to three-step instructions, Finding 4, *id.* at 11; that, considering her age (39 years old, defined as a younger individual, on the date her application was filed), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id.* at 15-16; and that she, therefore, had not been disabled since September 23, 2008, the date that her application was filed, Finding 10, *id.* at 16. The Decision Review Board selected the decision for review but failed to act within 90 days, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the

plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Treatment of Treating Source

The record contains several expert assessments of the plaintiff's mental RFC. In a Psychiatric Review Technique Form ("PTRF") completed on January 2, 2009, Disability Determination Services ("DDS") nonexamining consultant Lewis F. Lester, Ph.D., found that the plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, with no episodes of decompensation. *See* Record at 482. He deemed her capable of (i) understanding and remembering simple, repetitive tasks and procedures, (ii) being reliable and sustaining two-hour blocks at simple tasks at a consistent pace over a normal workday/workweek, (iii) interacting with co-workers and supervisors in a normal work setting, but not with the public, and (iv) adapting to occasional and routine changes. *See id*. at 488.

After reviewing subsequently submitted medical evidence, a second DDS nonexamining consultant, Scott W. Hoch, Ph.D., completed a PRTF dated May 29, 2009, in which he stated that he concurred with Dr. Lester's opinions. *See id*. at 585, 587.

In March 2010, Dr. Risser completed a mental RFC questionnaire indicating, *inter alia*, that the plaintiff was seriously limited, but not precluded, in 10 mental abilities and aptitudes needed to do unskilled work, including the abilities to understand and remember very short and simple instructions, sustain an ordinary routine without special supervision, and get along with co-workers or peers without unduly distracting them, and that she was unable to meet competitive standards with respect to eight such abilities and aptitudes, including the abilities to

carry out very short and simple instructions, maintain attention for a two-hour segment, and complete a normal workday and workweek without interruptions from psychologically-based symptoms. *See id*. at 618-19. He further stated, *inter alia*, that, on average, the plaintiff's impairments or treatment would cause her to be absent from work more than four days per month. *See id*. at 619.

Finally, James Claiborn, Ph.D., an expert present at the plaintiff's July 12, 2010, hearing, testified that, in his opinion, the plaintiff's mental impairments mildly restricted her activities of daily living, moderately impacted her social functioning, and moderately impacted her concentration, persistence, and pace, with no known episodes of decompensation. *See id*. at 49. He stated that the plaintiff would be capable of interacting with co-workers and supervisors but not with the general public, and that she could do short demonstration work, entailing a few steps, but not work entailing more complicated or detailed instructions. *See id*.

The administrative law judge chose to give Dr. Risser's opinion "limited weight due to his infrequent treatment of the [plaintiff], her documented capacity to successfully engage in activities of daily living, and Dr. Claiborn's opinion, which relies on a review of the entire medical record." *Id*. at 15. He accorded special weight to the opinion of Dr. Claiborn on the bases that Dr. Claiborn had the benefit of review of the record as a whole, and his opinion was consistent with the objective medical evidence. *See id*. He gave significant weight to the opinions of Drs. Lester and Hoch, which he likewise found consistent with the medical evidence of record. *See id*.

The plaintiff attacks each of the administrative law judge's rationales for affording little weight to the Risser opinion, arguing that none of them supplies the requisite "good reasons" for its rejection and that consideration of the factors that adjudicators must consider in evaluating

4

medical opinions, set forth in 20 C.F.R. § 416.927(d)(2), actually supports adoption of that opinion. *See* Statement of Errors at 2-4; *see also* 20 C.F.R.§ 416.927(d)(2) (listing factors to be considered in evaluating medical opinions; promising to "always give good reasons in [the commissioner's] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion").[2]

Specifically, the plaintiff argues that the administrative law judge:

1. Wrongly characterized her treatment by Dr. Risser as "infrequent" but then relied on the testimony of Dr. Claiborn, who had never even examined her. *See* Statement of Errors at 2.

2. Erroneously suggested that her activities of daily living, which he referred to in conclusory fashion, showed an ability to work full-time, ignoring her testimony that she had numerous severe limitations in daily activities, for example, needing help from her children with housework, sometimes going to bed during the day, leaving the house only a couple of times per week, usually sitting at home and doing nothing, and limiting activities outside of the home so as to avoid contact with too many people. *See id*. at 2-3.

3. Adopted the opinion of a non-examining consultant, Dr. Claiborn, over that of a treating source, without even asking Dr. Claiborn to consider Dr. Risser's RFC opinion. *See id*. at 3-4.

As counsel for the commissioner conceded at oral argument, the administrative law judge indeed inaccurately characterized the plaintiff's visits to Dr. Risser as "infrequent." Commencing on December 16, 2008, Dr. Risser saw and evaluated the plaintiff every three

---

[2] These factors are: (i) length of the treatment relationship and frequency of examination, (ii) nature and extent of the treatment relationship, (iii) supportability — *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) whether the treating physician is offering an opinion on a medical issue related to his or her specialty, and (vi) other factors highlighted by the claimant or others. 20 C.F.R. § 416.927(d)(2)-(6).

months pursuant to a Psychiatric Service Plan devised by Community Health and Counseling Services ("CHCS"). *See* Record at 543, 551, 593, 604, 608, 621. Yet, the error is harmless. The administrative law judge's other bases for rejecting the Risser opinion are supported by substantial evidence and supply a good reason for according little weight to the opinion, namely, that it was inconsistent with the record as a whole. *See* 20 C.F.R. § 416.927(d)(4).

With respect to activities of daily living, the administrative law judge observed: "The [plaintiff] is fully independent and is able to manage a household including two minor children. Although her children help with household chores, the [plaintiff] is able to do the laundry, clean dishes, and sweep." Record at 14. This finding is consistent with a Function Report in which the plaintiff described her activities from the time she woke up until she went to bed as follows: "get kids off to school, go back to bed (sometimes), watch TV, listen to music, read, sweep, dishes, help kids w/ homework, family time, feed kids, go to bed[.]" *Id*. at 180. In addition, CHCS described the plaintiff as managing her own activities of daily living, *see, e.g., id*. at 599 (psychosocial assessment dated October 6, 2009), and Darlene Canty, MHRT-C, of Allies Inc. noted on April 17, 2010, that "most of [the plaintiff's] world centers around managing her home and getting her children to their appointments[,]" *id*. at 626. Moreover, as counsel for the commissioner noted at oral argument, the administrative law judge's finding regarding activities of daily living was consistent with those of Drs. Claiborn and Lester, who judged her only mildly restricted in such activities. *See id*. at 49, 482, 488. The administrative law judge reasonably perceived the plaintiff's activities of daily living as in tension with the level of mental impairment described in the Risser report. *Compare id*. at 618-19.

The administrative law judge likewise supportably found an inconsistency between the Risser RFC opinion and that of Dr. Claiborn.[3] The administrative law judge was tasked with resolving precisely such conflicts in the evidence, *see, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."), and he did so on the permissible bases that Dr. Claiborn, albeit not a treating or examining source, had the benefit of the review of the full medical record and that his opinion was consistent with the objective medical evidence, *see, e.g., Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, nonexamining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).[4]

---

[3] At oral argument, the plaintiff's counsel contended that Dr. Claiborn, unlike Dr. Risser, never addressed the question of whether the plaintiff could successfully complete a 40-hour workweek and, hence, the Claiborn opinion does not support a rejection of the Risser opinion. I disagree. It is implicit in Dr. Claiborn's testimony that he considered the plaintiff capable of working 40 hours per week. After questioning Dr. Claiborn about specific aspects of the plaintiff's mental RFC, the administrative law judge asked if there were "any other vocational considerations[.]" Record at 49-50. Dr. Claiborn identified none, other than a restriction against being around crowds. *See id.*

[4] With respect to objective medical evidence, the administrative law judge fairly characterized the plaintiff's longitudinal treatment record as "indicat[ing] that her cognitive and intellectual functioning has remained intact[,]" with "the great weight of the medical record indicat[ing] that the [plaintiff] is stable with treatment and retains adequate intellectual and thought processes." Record at 13 (citations omitted); *see also, e.g., id*. at 544, 546, 547 (progress notes of Judy Jones, RNC, of CHCS dated January 21, 2009, February 24, 2009, and March 10, 2009, describing plaintiff as alert, fully oriented, making good eye contact, attentive, and cooperative, with euythmic mood and thoughts appearing clear, coherent, relevant, and reality-based), 595 (progress note of Jones dated October 6, 2009, describing the plaintiff as "more or less stable on current medication regimen"), 604 (progress note of Dr. Risser dated September 1, 2009, relaying plaintiff's report that she was doing well, and things were "pretty good" other than living through the second anniversary of her husband's death), 622 (progress note dated February 23, 2010, of Jones noting that plaintiff's mood was gloomy and affect sad, with family conflicts continuing, but that she was "alert, clear, interested, cooperative, and composed" and denied any problems with her current medication regimen).

For these reasons, I find no reversible error in the handling of the Risser RFC opinion.

## B. Credibility Determination

The administrative law judge deemed the plaintiff's subjective complaints not credible to the extent that they were inconsistent with his RFC finding. *See* Record at 11. He explained:

> The subjective factors applicable to this case indicate that the [plaintiff] is not entirely credible. As described above, the objective medical evidence does not support her alleged symptoms of totally disabling pain. The [plaintiff] is fully independent and is able to manage a household including two minor children. Although her children help with household chores, the [plaintiff] is able to do the laundry, clean dishes, and sweep. She has limited her pain treatment to narcotic medication; the record does not indicate that she has pursued physical therapy or been referred for a surgical consultation. In regard to her mental impairment, the [plaintiff] has a history of suspending medication and failing to appear for counseling sessions. The [plaintiff's] decision not to diligently pursue all avenues of treatment is inconsistent with a totally disabling impairment.

*Id*. at 14 (citation and footnote omitted). As part of a lengthy discussion of the medical evidence of record, the administrative law judge also observed, in a footnote:

> [Pain specialist Peter W. Just, M.D.] suggested that the [plaintiff's] pain relief may have possibility [sic] resulted from a placebo effect. Dr. Just reported that a placebo responder is a good patient because they "want very badly to get better." Alternatively, the [plaintiff's] positive response to a placebo could suggest that the [plaintiff] exaggerates her subjective pain complaints. Because Dr. Just is the only treating source to identify the [plaintiff] as a placebo responder, the undersigned does not find that the [plaintiff's] reported placebo response either supports or detracts from [her] credibility.

*Id*. at 12 n.1 (citations omitted); *see also id*. at 370 (report of Dr. Just).

"The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987). The plaintiff argues, in effect, that the credibility determination made in this case is unsupported by specific findings because it was

8

"slanted" and "inaccurate" and, thus, warrants no deference. Statement of Errors at 5. I am unpersuaded.

The plaintiff first argues that the administrative law judge relied on a conclusory, misleading, and selective analysis of her activities of daily living, which are in no way inconsistent with an inability to work a full-time schedule. *See id*. at 4. Nonetheless, as discussed above, the administrative law judge supportably found that the plaintiff engaged in a wide range of activities of daily living, albeit on some occasions with the assistance of her children. While a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, *see, e.g., Eaton v. Astrue*, Civil No. 07-188-B-W, 2008 WL 4849327, at *5 (D. Me. Nov. 6, 2008) (rec. dec., *aff'd* December 1, 2008), an administrative law judge properly may take such activities into consideration in assessing the credibility of a claimant's allegations, *see, e.g., Nolan v. Astrue*, Civil No. 09-323-P-H, 2010 WL 2605699, at *7 n.4 (D. Me. June 24, 2010) (rec. dec., *aff'd* July 28, 2010), and in resolving conflicts in the evidence with respect to medical experts' and treating providers' opinions of a claimant's capabilities, *see, e.g., Eaton*, 2008 WL 4849327, at *5. That is precisely what the administrative law judge did here.

The plaintiff next complains that the administrative law judge repeatedly stated that there was little objective evidence substantiating her pain despite the existence of an MRI report showing a compressed nerve root. *See* Statement of Errors at 5. Yet, the administrative law judge pointed out that, despite the MRI report, Dr. Just noted that the plaintiff was "generally well" and that, although her gait was cautious and slow, it was "reciprocal and without spasticity[,]" she had no straight leg raising pain, she retained normal lower extremity strength and reflexes, and she exhibited poor lumbar range of motion but a full, pain-free range of motion

9

in her hips, findings consistent with those made by other providers. *See* Record at 12; *see also, e.g., id.* at 374 (Dr. Just), 402 (Hans Duvefelt, M.D.).

The administrative law judge further observed that the plaintiff had filed her current claim for benefits less than one year after a different administrative law judge denied a previous claim based on a similar theory of disability, with the plaintiff's representative confirming at hearing that the previous administrative law judge considered the MRI report indicating nerve compression and that the plaintiff presented with no additional diagnostic impairments. *See* Record at 11; *see also id.* at 12 (observation by administrative law judge that "the [plaintiff's] condition has remained essentially unchanged since Judge Fallon issued his prior decision"), 24-27 (colloquy at hearing between the administrative law judge and the plaintiff's representative).

The administrative law judge thus adequately considered the MRI report against the backdrop of other objective findings of record.

The plaintiff next faults the administrative law judge for impugning her for failure to follow up on treatment when she had in fact undergone extensive treatment. *See* Statement of Errors at 5. She adds that he neglected to make the inquiries required by Social Security Ruling 82-59 ("SSR 82-59") before an adjudicator may rely on a claimant's failure to follow prescribed treatment. *See id.* Yet, the evidence of record indicates that the plaintiff failed to attend, or to call to cancel, several mental health counseling appointments in 2009 and 2010, and that, as of December 23, 2009, she had been off her medications for about two months. *See id.* at 592-94, 605.

SSR 82-59 does not bar the administrative law judge from having taken that evidence into account in the context of his credibility assessment. Pursuant to SSR 82-59, a failure to obtain treatment cannot be a basis for refusal to grant benefits unless the claimant has been given

notice of the issue and an opportunity to obtain the relevant treatment. *See* SSR 82-59, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 797. However, that ruling applies only when a claimant has been determined to be disabled *but for* failure to seek prescribed treatment expected to restore his or her ability to work. *See id*. at 793. *See also, e.g., MacNeil v. Social Sec. Admin. Comm'r*, No. 1:10-cv-00393-JAW, 2011 WL 4436975, at *5 (D. Me. Sept. 21, 2011) (rec. dec., *aff'd* Oct. 13, 2011) ("When the 'failure to follow' issue [described in SSR 82-59] presents the tipping point between a finding of disabled versus a finding of not disabled, the Commissioner must conduct an analysis of whether the claimant's failure to follow prescribed treatment is justifiable. Here, on the other hand, the Judge did not find that MacNeil would be disabled in the absence of treatment. . . . Rather, the Judge found that MacNeil's prescribed treatment causes MacNeil's symptoms to have no more than a mild impact on work function.") (citation omitted).

In the context of assessing the credibility of the plaintiff's underlying allegations, an administrative law judge is required only to take into consideration any explanations for failure to seek or follow treatment that were offered by the plaintiff or that otherwise appear of record. *See, e.g.*, Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011) ("SSR 96-7p"), at 140 ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or

11

irregular medical visits or failure to seek medical treatment."). The plaintiff has pointed to no such explanatory material in this case. *See* Statement of Errors at 5.

The plaintiff finally complains that the administrative law judge erred in stating, in the absence of any record support, that the finding of Dr. Just that she was a "placebo responder" might indicate symptom exaggeration, further evidence of his "one-sided and erroneous credibility analysis." *Id.* Although the administrative law judge neglected to cite to any evidence supporting the challenged observation, *see* Record at 12 n.1, such evidence existed, *see id.* at 571 (comment of DDS nonexamining consultant Donald Trumbull, M.D., that, in rendering his opinion of the plaintiff's physical RFC, he had found her credible for some pain/limitations due to nerve root compression; "however, 'placebo' response to injections discredits some of [the plaintiff's] symptomatology"). In any event, any error would have been harmless, the administrative law judge having expressly stated that the placebo effect response cut neither in favor of nor against the plaintiff's credibility. *See id*. at 12 n.1.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of January, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge